# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

GLENN FOSTER,

                Petitioner,

   v.

M. POWERS,

               Respondent.

_____/

CV F   04-6046 DLB HC

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT

[Doc. 1]

      Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge.

### PROCEDURAL HISTORY[1]

      On July 3, 2001, following a jury trial in the Kern County Superior Court, Petitioner was convicted of failing to register as a sex offender in violation of California Penal Code[2] section 290, subdivision (g).  Further, the jury found true enhancements for a prior prison term (§ 667.5, subd. (b)) and prior felony convictions (§ 667, subd. (e)).  Petitioner was sentenced to prison for seven years.  (Respondent's Exhibit 1, attached to Answer.)

      Petitioner filed a timely notice of appeal to the California Court of Appeal for the Fifth Appellate District.  On April 3, 2003, the Court of Appeal affirmed the judgment.  (Respondent's

---

[1] This information is derived from the petition for writ of habeas corpus and Respondent's answer.

[2] All future statutory references are to the California Penal Code unless otherwise indicated.

Exhibit 3.)

On May 8, 2003, Petitioner filed a petition for review with the California Supreme Court. The petition was denied on June 18, 2003.  (Respondent's Exhibit 4.)

On August 5, 2003, Petitioner filed a petition for writ of habeas corpus with the Kern County Superior Court.  The petition was denied on September 30, 2003.  (Respondent's Exhibit 5.)

On October 9, 2003, Petitioner filed a petition for writ of habeas corpus with the Fifth District Court of Appeal.  That petition was denied on November 20, 2003.  (Respondent's Exhibit 6.)

On January 2, 2004, Petitioner filed a petition for writ of habeas corpus with the California Supreme Court.  On July 14, 2004, the Court denied the petition.  (Respondent's Exhibit 7.)

Petitioner filed the instant petition for writ of habeas corpus on August 3, 2004. Respondent filed an answer to the petition on November 23, 2004, and Petitioner filed a traverse on December 27, 2004.  Petitioner submitted additional exhibits on August 10, 2005.

<u>STATEMENT OF FACTS</u>

<u>Prosecution Evidence</u>

In 1978, Petitioner was convicted of rape and deviate sexual assault in Illinois.  (SCT, certified November 19, 2001, at 13; People's Exhibit 6; RT 56-58.)

On January 11, 1999, prior to his release from custody, Petitioner signed a notification registration requirement form.  (SCT, certified November 19, 2001, at 5.)  The notice form contains a statement setting forth Petitioner's registration requirement.  The notice form is also signed by a correctional officer who certified that he had personally notified Petitioner of his registration responsibilities.  (SCT, certified November 19, 2001, at 5.)  Petitioner listed his address as 11703 South Berendo Avenue, No. 7, Los Angeles, California.  (RT 61-64; People's Exhibit 2; SCT, certified November 19, 2001, at 4-5.)  Subsequently, a Kern County Sheriff's Department fingerprint specialist testified that Petitioner's thumbprint appeared on the notification of registration form.  (RT 164-165.)  On July 2, 1999, Petitioner was stopped for a

2

traffic violation in California City.  (RT 138.)  On January 26, 2000, California City Police

Officer Matthew Alexander arrested Petitioner; he gave his address as 8012 Greenwood Avenue.

(RT 104-105.)

On March 5, 2000, Corporal Eric Hurtado went to the Greenwood address to arrest

Petitioner on a warrant out of Madera County.  (RT 110, 113.)

William Durst lived on the corner of Greenwood and Neuralia in California City.  On

December 1, 2000, he and his grandson sold a car to Petitioner.  (RT 140, 142.)  Petitioner

approached Durst about buying the vehicle.  Durst knew that Petitioner was staying at the house

located behind his, but he was not certain whether Petitioner was a permanent resident.  (RT

142.)  Durst had seen Petitioner at the residence no more than half a dozen times.  (RT 143.)

On December 1, 2000, the registration for the vehicle was transferred into Petitioner's

name; his address was listed as 8012 Greenwood Avenue.  (RT 132; People's Exhibit 9; SRT,

certified November 19, 2001, at 22.)  A Department of Motor Vehicles "Soundex" listed

Petitioner's address as 8012 Greenwood Avenue on march 3, 2001.  (RT 134-135; People's

Exhibit 10; SRT, certified November 19, 2001, at 25.)

Andre Ford lived at 8060 Greenwood Avenue.  Although he had never spoken with

Petitioner, Ford considered him a neighbor; having seen him at the residence, coming and going

and sitting on the front porch on several occasions.  (RT 151-154.)

<u>Defense Evidence</u>

Petitioner's sister-in-law, Donna Marie Foster, testified that before her husband's

(Petitioner's brother) death in 1998, Petitioner did not visit California City regularly.  (RT 209-

211.)  Foster knew Margo Jordan as Petitioner's "off and on" girlfriend who lived at 8012

Greenwood Avenue.  (RT 213.)  From August of 1999 to January of 2000, Foster rented the

house at 8012 Greenwood Avenue from Jordan.  During that time, Petitioner visited Foster and

stayed the weekend.  (RT 214-215.)  Foster testified that Jordan worked in Los Angeles and

would come to California City on the weekends and stay with Petitioner at the home on

Greenwood.  (RT 216, 224.)  Although Foster did not see Petitioner during the week, she

acknowledged that he could have been residing in California City.  (RT 226-227.)

1        Willie Campbell met Petitioner in Long Beach, California in 1990.  (RT 230-231.)

2   Sometime around 1998 or 1999, Campbell began to take Petitioner to California City.  Petitioner

3   would sometimes stay the weekend there with relatives.  Campbell estimated he took Petitioner

4   to California City between 70 to 80 times.  (RT 232-233.)  In the year and a half prior to

5   Petitioner's trial, Campbell estimated that he took Petitioner to California City ten or twelve

6   times.  (RT 234.)  Campbell could not say whether or not Petitioner lived in California City.  (RT

7   251.)

8        Petitioner testified that when he was released from prison in Illinois in 1979 he was not

9   told to register as a sex offender.  (RT 260.)  Petitioner first came to California in 1981.  (RT

10  260.)  He was subsequently convicted of robbery and was released from prison in 1983.  (RT

11  260-261.)  He was incarcerated for several parole violations subsequent to his release.  (RT 261.)

12  Petitioner was never told of the registration requirement.  (RT 261, 262.)  In 1990, Petitioner was

13  sent to prison for another robbery conviction and was released in 1994.  He went back to prison

14  on parole violations several times between 1995 and 1998 and was finally released in 1999.  (RT

15  262.)  Petitioner testified that prior to each release from prison he was given several forms to sign

16  and he was told if he did not sign them he would not be released.  (RT 263.)  Specifically, when

17  he was released in 1999, petitioner was presented with between eight and ten documents to sign.

18  Petitioner stated: "I'm just signing signatures if I'm getting out, you know what I mean, you

19  know, trying to go on."  (RT 263.)

20       On January 25, 2000, Petitioner went to the emergency room at Robert F. Kennedy

21  Hospital.  He told hospital officials that he lived in Los Angeles.  Petitioner testified that he

22  never lived in California City.  (RT 264-265.)  Petitioner stated that he never lived with Jordan,

23  but would see her on the weekends when he wanted to get out of Los Angeles.  (RT 271.)

24  Petitioner used 8012 Greenwood Avenue as his mailing address because he was in and out of jail

25  and he needed a stable place to receive his mail.  (RT 274.)

26       On cross-examination, Petitioner claimed that some of the writing on the registration

27  form (People's Exhibit 2) was not his.  Petitioner claimed the signature on the form looked like

28  his writing, but he stated he was not sure and that he "may have signed it.'  (RT 281-282.)

1                                    DISCUSSION

2  A.    Jurisdiction

3         Relief by way of a petition for writ of habeas corpus extends to a person in custody

4  pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

5  or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

6  529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered

7  violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises

8  out of the Kern County Superior Court, which is located within the jurisdiction of this Court.  28

9  U.S.C. § 2254(a); 2241(d).

10        On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

11  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

12  enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), cert. denied, 522 U.S.

13  1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting

14  Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), cert. denied, 520 U.S. 1107, 117 S.Ct.

15  1114 (1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059

16  (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant

17  petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

18  B.    Standard of Review

19        This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

20  custody pursuant to the judgment of a State court only on the ground that he is in custody in

21  violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

22        The AEDPA altered the standard of review that a federal habeas court must apply with

23  respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v.

24  Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus

25  will not be granted unless the adjudication of the claim "resulted in a decision that was contrary

26  to, or involved an unreasonable application of, clearly established Federal law, as determined by

27  the Supreme Court of the United States;" or "resulted in a decision that was based on an

28  unreasonable determination of the facts in light of the evidence presented in the State Court

5

1   proceeding." 28 U.S.C. § 2254(d); <u>Lockyer v. Andrade</u>,123 S.Ct.1166 (2003) (disapproving of

2   the Ninth Circuit's approach in <u>Van Tran v. Lindsey</u>, 212 F.3d 1143 (9th Cir. 2000)); <u>Williams v.</u>

3   <u>Taylor</u>, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply

4   because that court concludes in its independent judgment that the relevant state-court decision

5   applied clearly established federal law erroneously or incorrectly."  <u>Lockyer</u>, at 1175 (citations

6   omitted).  "Rather, that application must be objectively unreasonable."  <u>Id.</u> (citations omitted).

7          While habeas corpus relief is an important instrument to assure that individuals are

8   constitutionally protected, <u>Barefoot v. Estelle</u>, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

9   (1983); <u>Harris v. Nelson</u>, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a

10  criminal conviction is the primary method for a petitioner to challenge that conviction.  <u>Brecht v.</u>

11  <u>Abrahamson</u>, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's

12  factual determinations must be presumed correct, and the federal court must accept all factual

13  findings made by the state court unless the petitioner can rebut "the presumption of correctness

14  by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); <u>Purkett v. Elem</u>, 514 U.S. 765, 115

15  S.Ct. 1769 (1995); <u>Thompson v. Keohane</u>, 516 U.S. 99, 116 S.Ct. 457 (1995); <u>Langford v. Day</u>,

16  110 F.3d 1380, 1388 (9th Cir. 1997).

17  C.     <u>Breach of 1978 Plea Agreement</u>[3]

18         Petitioner contends that because there was no registration requirement pursuant to the

19  plea agreement in his 1978 Illinois convictions, the plea agreement was breached and he could

20  not be convicted of failing to register.

21         When a plea agreement rests in any significant degree on a promise or agreement of the

22  prosecutor, so that it can be said to be a part of the inducement or consideration, such promise

23  must be fulfilled.  <u>Santobello v. New York</u>, 404 U.S. 257, 22 (1971).  To the extent Petitioner

24  contends that he was not informed that his convictions could later be subjected to registration

25  requirements, his claim is without merit.  Due process requires that a defendant be informed of

26

27          [3] Although Petitioner raised and Respondent addressed the ineffective assistance of counsel claims first, the
28  Court finds that because the ineffective of counsel claims must be analyzed with regard to Petitioner's other claims,
    it is logical to address it last.

all the *direct* consequences of a guilty plea.  Brady v. United States, 397 U.S. 742, 749 (1970).

There is no due process violation where a trial court fails to inform the defendant of *collateral*

consequences, such as the potential for enhancement in the future.  United States v. Garrett, 680

F.2d 64, 65-66 (9th Cir. 1982).  Thus, Petitioner's lack of knowledge that his 1978 Illinois

convictions could later subject him to registration requirements while residing in California does

not violate due process.

Although Petitioner may not have been required to register pursuant to his Illinois plea

agreement, it in no way follows that Petitioner cannot subsequently be convicted in California for

failing to follow California's registration requirements based on his Illinois conviction.

Petitioner's claim is simply without merit.  Further, there is no evidence that the prosecutor

promised in exchanged for his guilty plea that Petitioner did not have to register as a sex offender

and, as Respondent submits, it is highly unlikely a prosecutor would make such a promise.

Accordingly, Petitioner's claim is without merit.

D.    Violation of Illinois and California's Statute of Limitations

Petitioner contends that there was a violation of both the Illinois and California statutes of

limitations.  Specifically, Petitioner argues:

> [Petitioner] was incarcerated in California State Prison, Soledad, on a
> parole violation only, controlling case robbery 2nd.  Shortly before his release in
> Jan. 1999, appellant was misled into signing a notice of registration form, along
> with other release papers.  This is not the correct procedure in triggering a duty of
> registration requirement.  For the state of [C]alifornia to impose or subject
> appellant to a duty of registration 21 years after Chicago, Ill.  1978 plea agreement
> conviction, where there was no requirement of registration, does and will violate
> the statute of limitations and also put state of [C]alifornia in violation of Subject
> Matter Jurisdiction, which is also an issue in this writ of habeas corpus.

(Petition, Ground Three, at 2.)

As Respondent submits, although Petitioner attempts to phrase his argument in terms of a

due process violation, it fails to state a federal constitutional violation.  Further, Petitioner has

failed to demonstrated any statute of limitations violation.  As Respondent submits, Petitioner

was timely prosecuted for a violation of section 290, subdivision (2)(D), for failing to register as

a sex offender as a result of his Illinois conviction.  Petitioner was not charged again in Illinois,

therefore, the Illinois statute of limitations was not violated.

E.   <u>Double Jeopardy</u>

Petitioner contends that the duty to register as a sex offender in California is a violation of the Double Jeopardy Clause because there was no duty to register pursuant to his 1978 plea agreement on the Illinois sexual offense charges.

The Double Jeopardy Clause of the Fifth Amendment of the Constitution states that: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V; <u>see also</u> <u>United States v. Ursery</u>, 518 U.S. 267, 116 S.Ct. 2135, 2139 (1996). The Double Jeopardy Clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. <u>Schiro v. Farley</u>, 510 U.S. 222, 229, 114 S.Ct. 783, 789 (1994); <u>North Carolina v. Pearce</u>, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076 (1969), overruled on other grounds by <u>Alabama v. Smith</u>, 490 U.S. 794, 109 S.Ct. 2201 (1989).

The Double Jeopardy Clause is inapplicable to the instant case because Petitioner has not been twice convicted for the same offense. In 1978, Petitioner was convicted of rape and deviate sexual assault in Illinois and was, therefore, required to register as a sex offender in California. (§ 290, subd. (2)(D).) Petitioner failed to do so. (SCT, certified November 19, 2001, at 11-19; RT 56-58.) As Respondent submits, the requirement to register as a sex offender is not punitive in nature. In <u>Hatton v. Bonner</u>, 356 F.3d 955 (9th Cir. 2004), the petitioner asserted an Ex Post Facto and Due Process Clause violation by an amendment to California's sex offender registration statute which added Petitioner's crime to the list of those requiring registration years after he had been convicted. (<u>Id</u>. at 961.) The Court first determined that the sex registration requirement was not punitive. (<u>Id</u>. at 961-967.) Because Petitioner was not twice convicted of the same offense and because the life-long requirement to register as a sex offender is not punitive in nature, there was no Double Jeopardy violation.

F.   <u>Subject Matter Jurisdiction</u>

Petitioner contends that California had no subject matter over his Illinois conviction.

As Respondent submits, Petitioner's claim fails to raise a cognizable federal question and, in any event, is without merit. As previously stated, federal habeas corpus is available only

on behalf of a person in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991).   A claim that California did not have subject matter over his Illinois conviction, fails to state a constitutional violation.

In any event, California did have jurisdiction over the crime for which he was convicted, failing to register as a sex offender pursuant to section 290, subdivision (2)(D).  Petitioner was convicted of rape and deviate sexual assault in Illinois in 1978.  (SCT, certified November 19, 2001, at 13, 16-18.)  Had Petitioner been convicted in California, his offense would have punishable as rape, pursuant to section 290, subdivision (a)(1)(A).  Therefore, pursuant to section 290, subdivision (2)(D), Petitioner was required to register as a sex offender, and California had subject matter jurisdiction over this offense as he was residing in California.

G.    Insufficient Evidence

Petitioner contends that there was insufficient evidence to support his conviction for failing to register as a sex offender pursuant to section 290.

The law on insufficiency of the evidence claim is clearly established.  The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a federal court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Sufficiency claims are judged by the elements defined by state law.  Id. at 324, n. 16.

In rejecting Petitioner's claim on direct appeal, the Court of Appeal held:

> [Petitioner] challenges the sufficiency of the evidence proving that he actually knew he had a duty to register.  He argues that although he signed the notice form, this does not show that he was verbally notified of the registration requirement.  Since he testified that he did not read the notice form, and there is no other evidence proving that he was notified of his duty to register, the actual knowledge element was not proven.  This argument is specious.  The bottom of the notice form contains a statement signed by a correctional officer, C. Plymesser, certifying that he notified [Petitioner] of his duty to register.  Although the notice form does not explicitly state that the correctional officer orally apprised [Petitioner] of his obligations pursuant to section 290, this is the only reasonable construction of the certifying officer's statement because the registration duties have already been set forth in writing in an earlier section of the form.  In fact, we are baffled why the Attorney General did not mention the

certifying officer's statement in his responsive brief.

[Petitioner] also argues that his testimony overcame the inference of actual knowledge arising from his signature and thumbprint on the notice form [citation.] We reject this argument because it conflicts with settled principles of appellate review.  Reversal is not warranted merely because the facts of the case might be reconciled contrary to the judgment. [citation.] On appeal, the evidence is considered in the light most favorable to the prosecution and all inferences are drawn in support of the verdict.  The appellate court presumes in support of the judgment the existence of every fact the trier reasonably could have deduced from the evidence. [citation.] [Petitioner's] signature and his thumb print on the notice form are sufficient evidence proving that he had knowledge that he was required to register. [citation.]  The notice form contains a statement setting forth the registration obligations and a correctional officer certified therein that he notified [Petitioner] of his registration obligations.  By returning a guilty verdict, the jury rejected [Petitioner's] shifting testimony that he did not sign the notice form, that he might have signed the notice form, that the notice form was "doctored" and that even if he did sign the notice form he did not read it. [Petitioner's] variable testimony lacked credibility and, standing alone, does not overcome the presumption in favor of the jury's verdict as a matter of law.  That the jury asked the judge a question during its deliberations about ignorance of the law does not cause this court to modify the established standard of appellate review.  The verdict has adequate evidentiary support. [citation.]

(Respondent's Exhibit 3, at 5-7.)

Although the Court of Appeal's decision did not cite to Jackson v. Virginia, the standards as set forth and applied by the state court comport with the Jackson standard, and the decision is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. See Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam) (holding that a state court need not cite United States Supreme Court cases so long as the state court's reasoning and result do not contradict Supreme Court precedent.)  As the Court of Appeal held, the only testimony of lack of knowledge came from Petitioner himself, and was contradicted by the documentary evidence indicating otherwise.  The jury was properly instructed that in order to convict Petitioner it must find that he had actual knowledge of the registration requirement, thus indicating that the jury rejected Petitioner's self-serving testimony.   Although the jury questioned the significance of ignorance of the law, the trial court's response was proper in that that question was properly resolved by reference to the elements as set forth by section 290.  If the jury believed Petitioner's testimony that he did not have actual knowledge of the registration requirement, it was required by the law, as properly instructed by the trial court, to acquit Petitioner.  (CT 192; RT 350.)

There was clearly sufficient evidence to support the jury's finding that Petitioner had

1   actual knowledge of the registration requirement. Petitioner signed the notice form setting forth

2   the registration requirement under California Penal Code section 290 prior to his release from

3   prison in 1999. (SCT, certified November 19, 2001, at 5.)  Furthermore correctional officer, C.

4   Plymesser, attested that Petitioner was informed of his registration requirement.  (Id.)  As the

5   Court of Appeal acknowledged, "[a]lthough the notice form does not explicitly state that the

6   correctional officer orally apprised [Petitioner] of his obligations pursuant to section 290, this is

7   the only reasonable construction of the certifying officer's statement because the registration

8   duties have already been set forth in writing in an earlier section of the form." (Respondent's

9   Exhibit 3, at 6.)  Additionally, there was evidence that the thumb print affixed to the notice form,

10  dated January 11, 1999, matched the thumb print from Petitioner's 1978 Illinois convictions.

11  (RT 74-81, 164-165; SCT, certified November 19, 2001, at 5, 7, 19.)  The state courts'

12  determination of this issue was not contrary to, or an unreasonable application of, clearly

13  established Supreme Court precedent.  Accordingly,  Petitioner's claim is without merit.

14  H.      Removing Element of Section 290 From Jury's Consideration

15      Petitioner contends that "[the] [t]rial court committed reversible error, lessened the

16  peoples [sic] burden of proof, and denied [Petitioner] his state and federal constitutional right to

17  trial by jury and due process by removing an element of section 290 from the jurys [sic]

18  consideration."  (Petition, Ground G.)  Specifically, as set forth by the Court of Appeal, the jury

19  was given a special instruction that correctly set forth the five elements necessary to prove that

20  Petitioner had violated section 290, including that in order for the jury to find Petitioner the

21  People must prove beyond a reasonable doubt that he was convicted of a qualifying offense.

22      Here, as in the state court, Petitioner contends the trial court later erred by removing the

23  issue from the jury's consideration by instructing them that individuals who have been convicted

24  of rape and deviate sexual assault are required to register.  The Court of Appeal held as follows:

25          We agree that this element should not have been removed from the jury's
            consideration, but conclude that the error is harmless beyond a reasonable doubt
26          [citation.] Stephanie Kennedy, a Kern County Sheriff's Department records
            technician, testified that she interpreted a CLETS document showing the sexual
27          crimes [Petitioner] committed in Illinois were offenses that required [Petitioner]
            to register. [Petitioner] did not counter this testimony or present any evidence
28          contesting this element of the offense.  During his closing argument, defense

                                            11

counsel did not argue that the rape and oral copulation convictions were not qualifying offenses.  There is no possibility that the jury would have had a reasonable doubt about the qualifying offense element if the instructional error had not occurred.

(Respondent's Exhibit 3, at 9.)

Due process requires that the jury be instructed on every element of an offense.  This is because the prosecution has the burden of proving every element beyond a reasonable doubt. Carella v. California, 491 U.S. 263, 265, 109 S.Ct. 2419, 2420 (1989) (citing In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068 (1970)).  In Neder v. United States, 527 U.S. 1 (1999), the Supreme Court determined whether the omission of a single element of the offense from the jury's determination was subject to harmless error analysis.  There, Neder was convicted of filing federal income tax returns and of federal mail fraud, wire fraud, and bank fraud.  At trial, the District Court determined that materiality with regard to the tax and bank fraud charges was not a question for the jury and found that the evidence established that element.  The Court thereafter instructed the jury that, to convict on the tax offenses, it "need not consider" the materiality of any false statements "even though that language is used in the indictment."  (Id. at 6.)  It was conceded that the District Court erred under United States v. Gaudin, 515 U.S. 506 (1995), by failing to submit the materiality element of the tax offense to the jury.[4]  (Id. at 8.)

The Court found that its decision in Johnson v. United States, 520 U.S. 461 (1997), was instructive.  "Johnson was a perjury prosecution in which, as here, the element of materiality was decided by the judge rather than submitted to the jury." (Id. at 9.) The Court concluded that the error did not warrant reversal in light of the overwhelming and uncontroverted evidence supporting the materiality element. (Id.)

The Court went on to state that "[i]n other cases, we have recognized that improperly omitting an element from the jury can 'easily be analogized to improperly instructing the jury on

---

[4]  In United States v. Gaudin, 515 U.S. 506 (1995), the Supreme Court held that the Constitution requires the judge to submit any question of materiality concerning a defendant's false statement to the jury.  In Gaudin, the trial judge had instructed the jury that "[t]he issue of materiality . . . is not submitted to you for you decision but rather is a matter for the decision of the court.  You are instructed that the statements charged in the indictment are material statements.  Id. at 508.  The Court held that because the trial judge had abrogated the jury's ability to make factual determinations on one of the requisite elements of the offense, a constitutional violation had occurred.  Id. at 523.

1    an element of the offense, an error which is subject to harmless-error analysis." (Id. at 10) (citing

2    *Johnson*, *supra*, at 469; *California v. Roy*, 519 U.S. 2, 5 (1996) (per curiam) ("The specific error

3    at issue here - - an error in the instruction that defined the crime - - is . . . as easily characterized

4    as a 'misdescription of an element' of the crime, as it is characterized as an error of 'omission'").

5          In this instance, the trial court instructed the jury that any person who since July 1, 1944,

6    has been convicted of rape or deviate sexual assault is required to register his address with the

7    Chief of Police of the city or the Sheriff of the county in which he is temporarily residing or

8    domiciled. (CT 194-195; RT 351.)  This, as found by the Court of Appeal was error, however it

9    was harmless.

10         As the Court of Appeal properly found, the prosecution submitted, through the testimony

11   of Stephanie Kennedy, a Kern County Sheriff's Department records technician, a CLET

12   document showing the sexual crimes of which Petitioner was convicted in Illinois were offenses

13   that required Petitioner to register in California.  (SCT, certified November 19, 2001, at 3;

14   People's Exhibit 1-A; RT 53-57.)  Petitioner did not counter this testimony or present any

15   evidence contesting this issue.  Further, here, Petitioner does not demonstrate or argue that he

16   was not convicted of a qualifying offense in Illinois.  Petitioner merely argues, at length, that his

17   Illinois plea agreement did not contain a requirement that he register as a sex offender, a wholly

18   irrelevant argument.

19         The Court of Appeal properly found that the instant error was harmless.  As stated by that

20   Court, as there was no issue, evidence, or argument that Petitioner's Illinois convictions for rape

21   and sexual deviant assault were not qualifying offenses, there is no possibility that the jury would

22   have had a reasonable doubt about the qualifying offense element if the error had not occurred.

23   As the Supreme Court found in Neder, reversal without any consideration of the effect of the

24   error upon the verdict would send the case back for retrial - - a retrial not focused at all on the

25   issue of whether Petitioner suffered a qualifying offense, but on contested issues of which the

26   jury was properly instructed.  Accordingly, Petitioner's claim fails on the merits.

27   I.     Instructional Error - CALJIC No. 1.20

28         In Ground H, Petitioner contends that "The trial court committed reversible error,

13

1   lessened the people[']s burden of proof, and denied [Petitioner] his state and federal

2   constitutional right to trial by jury and due process of law by incorrectly instructing the jury on

3   the actual knowledge element of section 290."

4         A challenge to a jury instruction solely as an error under state law does not state a claim

5   cognizable in a federal habeas corpus action.  See, Estelle v. McGuire, 502 U.S. 62, 71-72

6   (1991).  To obtain federal collateral relief for errors in the jury charge, a petitioner must show

7   that the ailing instruction by itself so infected the entire trial that the resulting conviction violates

8   due process.  See id. at 72.  Additionally, the instruction may not be judged in artificial isolation,

9   but must be considered in the context of the instructions as a whole and the trial record. Id.  The

10   court must evaluate jury instructions in the context of the overall charge to the jury as a

11   component of the entire trial process.  See, United States v. Frady, 456 U.S. 152, 169 (1982)

12   (citing Henderson v, Kibbe,  431 U.S. 145, 154 (1977)).  Furthermore, even if it is determined

13   that the instruction violated the petitioner's right to due process, a petitioner can only obtain

14   relief if the unconstitutional instruction had a substantial influence on the conviction and thereby

15   resulted in actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710

16   (1993) (whether the error had a substantial and injurious effect or influence in determining the

17   jury's verdict.). See, Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).  The burden of

18   demonstrating that an erroneous instruction was so prejudicial that it will support a collateral

19   attack on the constitutional validity of a state court's judgment is even greater than the showing

20   required to establish plain error on direct appeal."  Id.

21         In rejecting Petitioner's claim on direct appeal, the Court of Appeal held:

22         CALJIC No. 1.20 provides, "The word 'willfully' when applied to the
intent with which an act is done or omitted means with a purpose or willingness to

23   commit the act or to make the omission in question.  The word 'willfully' does
not require any intent to violate the law, or to injure another, or to acquire any

24   advantage.  Citing Garcia, supra, 25 Cal.4th 744, [Petitioner] challenges inclusion
of CALJIC No. 1.20 in the jury charge, arguing that it undermines the actual

25   knowledge element.  We disagree.  Garcia did not disapprove of CALJIC No.
1.20.  Provided additional instruction is given on the element of actual knowledge,

26   use of CALJIC No. 1.20 remains authorized.  (Id. at pp. 753-754.)  Since the trial
court here instructed on the element of actual knowledge in the special instruction

27   defining the elements of the offense, no error occurred.

28   (Respondent's Exhibit 3, at 9-10.)

1    In <u>Lambert v. California</u>, 355 U.S. 225 (1957), "the Supreme Court considered whether a

2    provision of the Los Angeles Municipal Code, imposing criminal penalties upon convicted felons

3    who remain in Los Angeles for more than five days and who fail to register with the chief of

4    police, was unconstitutional as applied to a person who had 'no actual knowledge of his duty to

5    register, and where no showing is made of the probability of such knowledge.' [citation.] The

6    Court reasoned that when such 'a person did not know of the duty to register and where there was

7    no proof of the probability of such knowledge, he may not be convicted consistently with due

8    process.'" <u>Bartlett v. Alameida</u>, 366 F.3d 1020 (9th Cir. 2004).  The Court of Appeal cited <u>People</u>

9    <u>v. Garcia</u>, 25 Cal.4th 744 (2001), which quoted <u>Lambert</u> finding that there must be actual

10   knowledge of the registration requirement.

11   In the instant case, as the Court of Appeal stated, the jury was specifically and properly

12   instructed that a violation of section 290 required actual knowledge of the registration

13   requirement and no due process violation has occurred.  (CT 192; RT 350.)  A violation of

14   section 290 is a general intent crime as described in CALJIC No. 3.30 (CT 191; RT 349-350.)

15   CALJIC No. 1.20 describes properly describes the general intent element of such crime.  (CT

16   193.)  Thus, there was no federal constitutional error in the jury instruction.  <u>See</u> <u>Estelle</u>, at 72.

17   (federal habeas relief is warranted only if there is instructional error that "so infected the entire

18   trial that the resulting conviction violates due process."  The California Court of Appeal's

19   rejection of Petitioner's due process claim was not an unreasonable application of or contrary to

20   clearly established federal law.

21   K.    <u>Instructional Error - CALJIC No. 4.35</u>

22   In Ground I, Petitioner contends that "The trial court committed reversal [sic] error,

23   lessened the peoples burden of proof, and denied [Petitioner] his state and federal constitutional

24   right to trial by jury and due process of law by refusing his request for caljic no. 4.35, and

25   incorrectly answering the jurys [sic] question regarding ignorance of the law."  (Petition, Ground

26   9.)

27   In rejecting Petitioner's claim on direct appeal, the Court of Appeal held:

28   [Petitioner] also challenges the trial court's refusal to give CALJIC No.

4.35, which instructs on the mistake-of-fact defense.[5] The court reasoned that this instruction was cumulative to the special instruction setting forth the elements of the offense. We agree that the court should have acceded to [Petitioner's] request and given this instruction either as part of the initial jury charge or in response to the jury's question whether ignorance of the law excused noncompliance. [footnote omitted.] The defense was based in substantial part on the theory that [Petitioner's] failure to register was not criminal because [Petitioner] was unaware that he had a duty to register; [Petitioner] may have signed the notice form but he did not read it. [Petitioner's] testimony supports his theory. Even in the absence of a request, the trial court is obligated to instruct sua sponte on defenses that are relied on by the [Petitioner] and are supported by evidence that is deserving of the jury's consideration. [Citation.]

. . . .

Yet, we have also concluded that omission of this instruction does not necessitate reversal of the judgment. [Citation.] the omission did not foreclose the jury's consideration of the question whether [Petitioner] knew of the registration requirement. Defense counsel argued in closing that [Petitioner] was not aware of the registration requirement and therefore the prosecutor had not satisfied his burden of proving the element of actual knowledge. As recognized by the Attorney General, in order for the jury to conclude that [Petitioner] was guilty, it had to determine that he actually knew of the duty to register and therefore was not ignorant of the law. Turning to an examination of the record, the only evidence supporting the mistake-of-fact defense was [Petitioner's] testimony and he lacked credibility. No reasonable jury would have believed him. The jury's question about ignorance of the law does not change our assessment of [Petitioner's] believability. . . .

(Respondent's Exhibit 3, at 11-12.)

A criminal defendant is entitled to an instruction on his theory of the case provided that it is supported by law and has some foundation in the evidence. Conde v. Henry, 198 F.3d 734, 739 (9th Cir. 2000). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See Estelle v McGuire, 502 U.S. at 72. Additionally, the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id. The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on

---

[5] CAJLIC No. 4.35 provides:

An act committed or an omission made in ignorance or by reason of a mistake of fact which disproves any criminal intent is not a crime. [¶] Thus a person is not guilty of a crime if [he][she] commits an act or omits to act under an actual [and reasonable] belief in the existence of certain facts and circumstances which, if true, would make the act or omission lawful.

1   direct appeal." See Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).  Moreover, a

2   Petitioner whose claim involves the *omission* of an instruction "bears an especially heavy

3   burden," because an omission is less likely to be prejudicial than a misstatement of the law.

4   Reynolds v. Maddock, 1999 WL 354366, *3 (N.D. Cal. 1999), aff'd 232 F.3d 896 (9th Cir. 2000).

5          As stated above, the Court of Appeal found that the trial court erred in failing to give

6   CALJIC No. 4.35, the mistake-of-fact defense instruction; the Court held, however, that any error

7   was harmless and nonprejudical.  The state courts' determination of this issue was not contrary

8   to, or an unreasonable application of, clearly established Supreme Court precedent.

9          The evidence of Petitioner's lack of actual knowledge was presented and argued to the

10  jury, both in Petitioner's testimony and counsel's closing argument.  Specifically, Petitioner

11  testified that he was never told of the registration requirement.  (RT 261, 262.)  In 1990,

12  Petitioner was sent to prison and was released in 1994.  He went back to prison on parole

13  violations several times between 1995 and 1998 and was finally released in 1999.  (RT 262.)

14  Petitioner testified that prior to each release from prison he was given several forms to sign and

15  he was told if he did not sign them he would not be released.  (RT 263.)  Specifically, when he

16  was released in 1999, petitioner was presented with between eight and ten documents to sign.

17  Petitioner stated: I'm just signing signatures if I'm getting out, you know what I mean, you know,

18  trying to go on." (RT 263.)

19         During closing argument, defense counsel argued Petitioner's lack of knowledge of the

20  requirement to register and that the prosecution had failed to meet its burden of proving actual

21  knowledge beyond a reasonable doubt.  (See RT 326-334.)

22         Although the Court of Appeal found, the mistake-of-fact likely should have been given to

23  the jury, the fact that it was not did not result in prejudice to Petitioner and was therefore

24  harmless error.  As the Court of Appeal stated and found, the jury's question regarding ignorance

25  of the law does not change this findings.

26         Approximately forty minutes prior to rendering a verdict of guilty, the jury submitted a

27  question of whether ignorance of the law was a ground for not complying.  (CT 138.)  In

28  response to this question, the judge instructed the jury that the answer could be resolved by

reference to the elements as set forth in section 290.  (RT 357.)  As the Court of Appeal found, there is no evidence in the record that the trial court's failure to instruct the jury on the defense of mistake-of-fact resulted in actual prejudice.  Although the jury questioned whether ignorance of the law was a ground for not complying, the trial court properly instructed the jury that the answer could be found by reference to the elements as set forth in section 290.  If the jury found that Petitioner did not have actual knowledge of the registration requirement then that element was not met and Petitioner could not be convicted.  Further, ignorance of the law is not a defense to a violation of the law.  Mistake-of-fact is, however, a defense.  But, Petitioner's defense was not mistake-of-fact, but rather that he did not have actual knowledge of the registration requirement negating an essential element for a conviction.[6]  However, the jury's finding of guilt implies that the jury specifically found that Petitioner had actual knowledge of the registration requirement, rejecting Petitioner's defense of mistake-of-fact.  As such, the Court of Appeal's finding that the error was harmless is not contrary to or an unreasonable application of Supreme Court precedent.

K.      Ineffective Assistance of Counsel

Petitioner contends that counsel was incompetent in several respects: (1) failing to subpoena the transcripts from the prior convictions; (2) failed to argue lack of jurisdiction, double jeopardy, ex post fact concerns, statute of limitations, and breach of 1978 plea agreement; (3) failed to inform jurors that section 290 did not apply to Petitioner's prior conviction and that he was never required to register as a sex offender; (4) challenge the 1999 notice of registration form; (5) object to the Illinois prison packet as hearsay; (6) object to trial court's refusal to instruct the jury with CALJIC No. 4.35; (7) object to the court's error of removing an element of the case (Petitioner's prior conviction of a qualifying offense) from the jury's consideration; (8) object to the trial court's misinstruction regarding the actual knowledge element and the courts answer to the jury's question regarding ignorance of the law; (9) object to Petitioner being denied

---

[6] Although Petitioner argues at length that his 1978 Illinois plea agreement did not contain a requirement to register as a sex offender, that argument was not presented at trial, and even if it were presented it is not a valid argument as it is irrelevant to the California registration requirement.

1   the right to fully present his defense; (10) properly represent Petitioner; and (11) advise Petitioner

2   of applicable defenses.

3          The law governing ineffective assistance of counsel claims is clearly established for the

4   purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe,

5   151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective

6   assistance of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S.

7   668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First,

8   the petitioner must show that counsel's performance was deficient, requiring a showing that

9   counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by

10  the Sixth Amendment. Strickland, 466 U.S. at 687.  The petitioner must show that counsel's

11  representation fell below an objective standard of reasonableness, and must identify counsel's

12  alleged acts or omissions that were not the result of reasonable professional judgment

13  considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348

14  (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges

15  a strong presumption that counsel's conduct falls within the wide range of reasonable

16  professional assistance.  Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v.

17  Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

18         Second, the petitioner must demonstrate that "there is a reasonable probability that, but

19  for counsel's unprofessional errors, the result ... would have been different," 466 U.S., at 694.

20  Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair

21  trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  The court must evaluate whether

22  the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness.  Id.;

23  Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

24         A court need not determine whether counsel's performance was deficient before

25  examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

26  Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984).  Since the defendant must

27  affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily

28  fail. However, there are certain instances which are legally presumed to result in prejudice, e.g.,

1  where there has been an actual or constructive denial of the assistance of counsel or where the

2  State has interfered with counsel's assistance.  See Strickland, 466 U.S. at 692; United States v.

3  Cronic, 466 U.S., at 659, and n. 25, 104 S.Ct., at 2046-2047, and n. 25 (1984).

4  Ineffective assistance of counsel claims are analyzed under the "unreasonable

5  application" prong of Williams v. Taylor, 529 U.S. 362 (2000).  Weighall v. Middle, 215 F.3d

6  1058, 1062 (2000).  With this standard in mind, the Court now turns to each of Petitioner's

7  claims of ineffective assistance of counsel.

8  With respect to Petitioner's first and second grounds of ineffectiveness, Petitioner fails to

9  state a claim.  Because the transcripts from the 1978 Illinois convictions regarding his plea

10  agreement are irrelevant to whether Petitioner can later be convicted in California for failing to

11  register, as discussed above, Petitioner has failed to demonstrate that counsel was ineffective, let

12  alone that he was prejudiced by counsel's inactions.  Further, as explained herein, Petitioner has

13  failed to demonstrate a double jeopardy, statute of limitations, and breach of the 1978 plea

14  agreement, accordingly, counsel could not have been ineffective for failing to argue these claims

15  and Petitioner was therefore not prejudiced.  James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994); see

16  also Shah v. United States, 878 F.2d 1156, 1162 (9th Cir. 1989) ("The failure to raise a meritless

17  legal argument does not constitute ineffective assistance of counsel.") (quotation marks and

18  citation omitted.)

19  With respect to Petitioner's third claim that counsel failed to inform Petitioner that his

20  prior conviction did not apply to section 290, is without merit.  As stated herein, Petitioner did

21  suffer two qualifying offenses, rape and deviant sexual assault, which qualify for registration

22  under section 290, and counsel's failure to argue this ground was not ineffectiveness nor was

23  Petitioner prejudiced.  James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994); see also Shah v. United

24  States, 878 F.2d 1156, 1162 (9th Cir. 1989) ("The failure to raise a meritless legal argument does

25  not constitute ineffective assistance of counsel.") (quotation marks and citation omitted.)

26  With regard to Petitioner's fourth and fifth claims that counsel did not challenge the 1999

27  notice of registration form or object to the Illinois prison packet as hearsay, Petitioner's claims

28  are without merit.  First, Petitioner's claims are conclusory in nature.  "Conclusory allegations

1   which are not supported by a statement of specific facts do not warrant habeas relief." James v.

2   Borg, 24 F.3d 20, 26 (9th Cir. 1994).  Second, Petitioner fails to demonstrate that counsel was in

3   anyway ineffective or that he was prejudiced by counsel's actions.   Petitioner provides no

4   grounds, nor can this Court conceive of any which provide a basis for objection or further that

5   there is a reasonable probability that, but for counsel's errors, the result would have been

6   different.  As such, Petitioner's claims fail.

7        With regard to Petitioner's sixth claim that counsel was ineffective for failing to object to

8   the trial court's failure to give CALJIC 4.35, which instructs on the mistake-of-fact defense.

9   Here, as stated under section K, Petitioner has failed to demonstrate that he was prejudiced by the

10  trial court's failure to give CALJIC 4.35, even assuming counsel was ineffective for failing to

11  object.  As such, Petitioner's ineffective assistance of counsel claim fails.

12       With regard to Petitioner's seventh claim that counsel was ineffective for failing to object

13  to the trial court's removing the element of Petitioner's prior conviction as a qualifying offense

14  from the jury's consideration, it too is without merit.  As stated under section H, Petitioner was

15  not prejudiced by the trial court's action in instructing the jury that Petitioner's Illinois

16  convictions were qualifying convictions, it logically follows that Petitioner has not, and cannot,

17  demonstrate that he was prejudiced by counsel's actions in failing to object.  Accordingly,

18  Petitioner's claim fails on the merits.

19       With regard to Petitioner's eighth claim that counsel was ineffective for failing to object

20  to the trial court's misinstruction regarding the actual knowledge element and the trial court's

21  answer to the jury's question regarding ignorance of law, it too is without merit.  As stated herein

22  under section I, was properly instructed on the actual knowledge element of the offense and the

23  trial court properly responded to the jury's question regarding ignorance of the law, and

24  Petitioner therefore cannot demonstrate that he was prejudiced by counsel's failure to object.

25       With regard to Petitioner's claims that he was denied his right to fully present his defense,

26  and that counsel failed to adequately represent and advise Petitioner, Petitioner fails to state a

27  claim.  Petitioner's claims are conclusory in nature and Petitioner has utterly failed to

28  demonstrate how counsel was ineffective or how he was in any prejudiced by counsel's actions.

That is, Petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's action, the result of the proceedings would have been different.  As such, Petitioner's claims fail.

To the extent Petitioner contends that counsel was ineffective for failing to seek to introduce evidence that Petitioner was taking psychotic medication when he signed the notice form, it too is without merit.  As stated by the Court of Appeal,

> [T]he record affirmatively demonstrates that counsel's omission was a conscious, reasonable tactical decision.  During in limine motions defense counsel told the court: "my client wanted me to - - desired the subpoenaing of a lot of mental health records, especially from the Department of Corrections.  And what I said back in chambers was it is my understanding that this crime is a failure to register as a sex offender pursuant to Penal Code Section 290.  And as such it is a general intent crime, not a specific intent crime.  So a lot of the records from the Department of Corrections would not be relevant at the present time."  As previously explained, counsel's recognition that section 290 is a general intent crime is correct. [Citation.] [Petitioner] fails to recognize that the mere fact that he was taking psychotropic medication does not necessarily prove that [he] was unable to process new information and acquire actual knowledge of the registration requirement. [Petitioner] has assumed that proof that he ingested such medication proves that he was unable to comprehend and retain the contents of the notice form.  We reject this assumption.  It scarcely bears repeating that many people function at high cognitive levels while they are being treated for mental illnesses.  Thus, evidence of medication usage is not necessarily relevant.  Furthermore, since defense counsel already had to contend with [Petitioner's] recidivism and his sexual offender status, to raise the specter of mental illness in front of the jury would have been a risky proposition.  It could have further prejudiced some of the jurors against him by causing them to think that if they acquitted [Petitioner] they were releasing a mentally-disordered sex offender into their midst.  Thus, this court can conceive of a satisfactory explanation why a diligent and reasonably competent attorney would have chosen to forego the opportunity to present evidence that [Petitioner] was taking psychotropic medication when he was released from Soledad Prison.

(Respondent's Exhibit 3, at 7-8.)

In this forum, Petitioner has failed to demonstrate that the California Supreme Court's silent denial, nor the Court of Appeal's disposition of this issue was contrary to, or an unreasonable application, of Strickland.  Specifically, Petitioner has not demonstrated that counsel was ineffective, let alone that Petitioner was somehow prejudiced by the failure to attempt to admit this evidence.  As such, Petitioner fails to state a claim.

M.   Cumulative Error

Petitioner contends that "the cumulative impact of the instructional errors and the

1  exclusion of relevant evidence crucial to [Petitioner's] defense mandates reversal of his

2  conviction." (Petition, Ground 12.)

3       Although no single alleged error may warrant habeas corpus relief, the cumulative effect

4  of errors may deprive a petitioner of the due process right to a fair trial. See Ceja v. Stewart, 97

5  F.3d 1246, 1254 (9th Cir.1996).  Cumulative error will be found where "there are several

6  substantial errors," and their cumulative effect is "so prejudicial as to require reversal." Killian v.

7  Poole 282 F.3d 1204, 1211 (9th Cir. 2002).  However, where there is no single constitutional

8  error, there is nothing to accumulate to a level of a constitutional violation.  Mancuso v. Olivarez,

9  292 F.3d 939, 957 (9th Cir. 2002).

10       In rejecting this claim on direct appeal, the Court of Appeal held:

11       Finally, [Petitioner] contends that the cumulative prejudicial effect of the
court's errors denied him a fair trial, due process of law and a reliable verdict in

12  violation of the Fifth, Sixth and Fourteenth Amendments to the United States
Constitution.  We disagree. [Petitioner] is entitled to a fair trial, not a perfect one.

13  (*United States v. Hasting*, 461 U.S. 499, 508-509 (1983).)  When a [Petitioner]
invokes the cumulative error doctrine, the litmus test is whether [Petitioner]

14  received due process and a fair trial.  When a claim based on cumulative errors is
raised, the record must be assessed to see if it is reasonably probable that the jury

15  would have reached a result more favorable to [Petitioner] in the absence of the
errors. [Citation.] We are convinced that [Petitioner] received a fair trial.  Only

16  two defects were found in the jury charge.  Even considered cumulatively, they
did not unfairly taint the trial process.  The evidence proving that [Petitioner]

17  knowingly failed to register after coming to reside in California City was strong.
It is not reasonably probable that [Petitioner] would have been acquitted if the jury

18  charged had been flawless. [Citation.]

19  (Respondent's Exhibit 3, at 12-13.)

20       No single error was made at Petitioner's trial that was sufficiently prejudicial on an

21  individual basis so as to warrant relief.  Likewise, even considering the cumulative effect of each

22  of Petitioner's allegations, this Court is not left with the impression that the errors were so

23  prejudicial as to require reversal.  Petitioner's claim of cumulative error is without merit and

24  must be denied.

25  ///

26  ///

27  ///

28  ///

1

<u>ORDER</u>

2

Based on the foregoing, it is HEREBY ORDERED that:

3

    1.        The petition for writ of habeas corpus is DENIED; and

4

    2.        The Clerk of Court is directed to enter judgment in favor of Respondent.

5

6

IT IS SO ORDERED.

7

**Dated:**    **October 3, 2005**               **/s/ Dennis L. Beck**
3b142a                                   UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28